DOWD, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| Paul C. Lund, Acting Regional Director of Region 8 of the National Labor Relations Board, | ) ) ) | CASE NO. 5:11 CV 679 |
| | ) | |
| Petitioner, | ) ) | ORDER OF INTERIM INJUNCTIVE RELIEF |
| v. | ) ) | |
| Case Farms Processing, Inc., | ) ) | |
| Respondent. | ) | |

Paul C. Lund, the Acting Regional Director of Region 8 of the National Labor Relations Board (Board), has filed Petition for Injunction pursuant to § 10(j) of the National Labor Relations Act (NLRA or Act) (29 U.S.C. § 160(j)), as amended, against Respondent, Case Farms Processing, Inc., for interim injunctive relief pending the final disposition of matters pending before the Board, based upon the Amended Consolidated Complaint and Notice of Hearing[1] attached to the Petition as Exhibit A. ECF 1.

Section 10(j) ((29 U.S.C. § 160(j)) provides:

> The Board shall have power, upon issuance of a complaint . . . charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court . . . for appropriate temporary relief or restraining order. Upon the filing of any such petition the court . . . shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper.

---

[1] The Amended Consolidated Complaint consolidates the charges filed in Case Nos. 8-CA-39152, 8-CA-39187, and 8-CA-39257 before the Board by the United Food and Commercial Workers Union, Local No. 880.

(5:11 CV 679)

Petitioner requests an interim order enjoining and restraining Respondent from engaging in certain specified activities, and requiring Respondent to take certain specified actions, until final disposition of the Amended Consolidated Complaint pending before the Board, filed by United Food and Commercial Workers Union, Local No. 88 (Union) alleging that Respondent Case Farms Processing has engaged in, and is engaging in, unfair labor practices within the meaning of Sections 8(a)(1) and (3)[2] of the NLRA (29 U.S.C. § 158(a)).  *See* ECF 1. Respondent filed an answer denying that it engaged in unfair labor practices, and opposing the Petition for interim injunctive relief.  *See* ECF 8 and 9.

Subsequently, both Petitioner and Respondent filed affidavits in support of their respective positions under seal pursuant to a protective order.  ECF 13 and 15.  Additional briefs were also filed under seal by both Petitioner and Respondent.  *See* ECF 18.[3]

---

[2] Section 8(a) -- It shall be an unfair labor practice for an Employer --
    (1) to interfere with, restrain, or coerce employees in the exercise
    of the rights guaranteed in Section 7; . . .
    (3) by discrimination in regard to hire or tenure of employment or
    any term or condition of employment to encourage or discourage
    membership in any labor organization.

[3] Petitioner has moved the Court to rule on the Petition based on witness affidavits and documents without conducting an evidentiary hearing.  ECF 3.

Section 10(j) does not require an evidentiary hearing and courts have found that 10(j) determinations may be made based on evidence submitted in the form of affidavits.  *Calatrello v. General Die Casters*, 2011 WL 446685 at * 4 (N.D. Ohio) (citing *Gottfried v. Frankel*, 818 F.2d 485, 493-94 (6th Cir. 1987)).

The Court has examined the affidavits submitted by the parties in support of their respective positions and finds that the evidence presented therein is clearly adequate for the Court to determine whether there is reasonable cause to believe that unfair labor practices have occurred in accordance with the legal standard for 10(j) interim injunctive relief.  It is not the Court's role in ruling on a Section 10(j) petition to resolve conflicts in the evidence that may be presented by the affidavits, but only to determine whether the affidavits support the Board's

(continued...)

(5:11 CV 679)

For the reasons that follow, the Petition is GRANTED.

## I.  FACTS

Respondent Case Farms Processing is a North Carolina Corporation with an office and plant in Winesburg, Ohio, where Respondent is engaged in the business of processing chickens for non-retail sale.  On June 5, 2007, the Union was certified as the exclusive bargaining representative for a single bargaining unit of about 325 production and maintenance employees at the Winesburg plant.  Thereafter, Respondent and the Union entered into voluntary recognition agreements which added approximately 30 employees to the bargaining unit.  The Respondent and Union have met on numerous occasions, but have yet to reach an agreement on a contract.

The Union filed multiple charges with the Board alleging that Respondent engaged in a variety of unfair labor practices in the months of August through November 2010 in violation of Sections 8(a)(1) and (3) of the NLRA.  These unfair labor practice charges were consolidated into the Amended Consolidated Complaint.

The Amended Consolidated Complaint specifically alleges that: 1) Respondent discharged two Union supporters; 2) disciplined a third Union supporter; and 3) through its Human Resources Manager, a supervisor, and/or an agent-employee, solicited an employee to act as a conduit for Respondent's unfair labor practices, made coercive statements and threats of

---

[3](...continued)
legal theory of an unfair labor practice.  Therefore, in view of the affidavits submitted, the Court concludes that an evidentiary hearing is not required to make that determination.  Accordingly, Petitioner's motion for a ruling on the Petition for 10(j) relief without a hearing is GRANTED.

(5:11 CV 679)

discharge and unspecified reprisal to discourage employee support for the Union, interrogated an employee regarding support for the Union, engaged in surveillance of employees' Union activities, and created the impression of surveillance.  ECF 1-5.

Petitioner has filed under seal nine (9) affidavits in support of its claims that Respondent has engaged in unfair labor practices in violation of Sections 8(a)(1) and (3) of the NLRA. Respondent denies that it has committed any unfair labor practices and has filed its own affidavits in support of that position.

A.     Alleged Section 8(a)(1) Violations

      1.     <u>Abel Acen - Respondent's Supervisor and Agent</u>

Petitioner alleges that Case Farm's Human Resources Manager, Abel Acen, solicited an employee to act as the agent of the Respondent for the purpose of making unlawful statements and conducting surveillance of employees' union activities, made coercive and threatening statements to employees regarding their Union activities, interrogated an employee regarding Union sympathies, and created the impression that employees' Union activities were under surveillance, all in violation of Section 8(a)(1) of the NLRA.

Petitioner's affidavits support the claim that Acen: 1) solicited an employee to make anti-Union and coercive statements to employees, including statements that the Union is not effective, that employees should not go out on strike, and that wages would not be increased until the Union was no longer at Case Farms (ECF 13 at 63, 64); 2) solicited employees to "spy" on employees and Union representatives, and to determine if the employees were going out on strike (ECF 13 at 65, 77, 85); 3) solicited an employee to keep Guatemalan (whom Acen

4

(5:11 CV 679)

considered synonymous with "Union supporter") trainers away from the training area where new employees were being trained so the Guatemalan trainers would not "bother" the new employees and because Acen planned to fire all of the Guatemalan trainers (ECF 13 at 77, 84, 85); 4) solicited an employee to "spy" on Union employees' activities, interrogated an employee regarding the employee's knowledge of a Union plan to strike, and threatened an employee by stating "you have to do it [spy] because you work on my team and I [Acen] am your boss" (ECF 13 at 85, 86,); 5) made threatening and coercive statements to employees regarding the Union, including statements that Acen would get rid of employees who participated in or encouraged strikes "little by little," suspend Union employees because they encourage other employees to strike, get rid of Guatemalans and replace them with non-Guatemalans, and provide a raise to employees if they got rid of the Union (ECF 13 at 63, 77, 78, 79, 85); 6) instructed new employees not to live in New Philadelphia or Dover, Ohio because Union supporters lived there and the Union supporters might convince new employees to join the Union (ECF 13 at 63); 7) repeatedly interrogated an employee regarding whether the employee supported Respondent or the Union, causing the employee to fear reprisal if the employee's allegiance was not "with Case Farms" (ECF 13 at 64); 8) terminated, and threatened to terminate Union supporters because "I [Acen] don't want Union people here" (ECF 13 at 65, 85); 8) created the impression of surveillance of Union employees through statement such as "I [Acen] have a list of the people who are with the Union . . . and I am going to get rid of them . . ." (ECF 13 at 64, 79).

Acen denies some, but not all, of the conduct described in the affidavits filed in support of Petitioner's motion for an interim injunction.  ECF 15.

5

(5:11 CV 679)

2.    <u>Respondent's Employees Acting as Respondent's Agents</u>

Petitioner alleges that Respondent's Human Resources Manager, Abel Acen, solicited an employee to act as the agent of the Respondent for the purpose of making anti-Union and coercive statements to employees in violation of Section 8(a)(1) of the NLRA.

Petitioner's affidavits support the claim that the solicited employee carried out Acen's instructions by making speeches to employees telling them that the Union did nothing for employees, that they should not go out on strike, and that employees will not get a raise until the Union is no longer at Respondent's facility.  ECF 13 at 63-64.

Petitioner further alleges that Acen solicited an employee to act as the agent of the Respondent for the purpose of conducting surveillance on a conversation between a terminated employee and Union representative to determine if the two were discussing a strike.  ECF 13 at 65.

Petitioner's affidavits support the claim that the solicited employee carried out Acen's instructions by trying to listen to the conversation between the terminated employee and Union representative and reporting back to Acen regarding the results of that surveillance.  ECF 13 at 65.

3.    <u>Emmanuel Bernard Cooper - Respondent's Supervisor and Agent</u>

Petitioner alleges that Respondent's supervisor and agent, Emmanuel Bernard Cooper, made threatening and coercive statements to one of Respondent's employees in violation of Section 8(a)(1) of the NLRA.

6

(5:11 CV 679)

Petitioner's affidavits support the claim that Cooper retaliated against an employee who was a vocal Union supporter, a Union committeeman, and strike organizer (*See* ECF 13 at 40-45) by treating that employee differently than other employees when Cooper: 1) told the employee that the employee was required to stay in the break room during breaks and could not go to the human resources offices when other employees were not required to stay in the break room during break (ECF 13 at 45, 63, 79-80); and 2) told the employee that the employee could not time the production lines while on breaks but must stay in the break room during breaks (ECF 13 at 47-48).

Cooper states that "numerous employees" have used stop watches to the speed of the production lines, and denies that he told this employee that the employee could not time the production lines.  ECF 15 at page ID # 290-91.

B.      Alleged Section 8(a)(3) Violations

      1.      <u>Respondent's Discharge of Two Employees</u>

Petitioner alleges that Respondent violated Section 8(a)(3) of the NLRA when it suspended and terminated two employees in retaliation for engaging in Union and/or protected concerted activity.

Petitioner's affidavits support the claim that the two employees in question were active in the Union, Union supporters and engaged in Union activities (ECF 13 at 1-10, 29), that Respondent generally expressed animus against employees who were Union supporters, and that Respondent terminated these employees because Respondent did not want "Union people" in the plant.  ECF 13 at 65, 85.

(5:11 CV 679)

Respondent denies that the employees were terminated because of their Union activities and claims that the employees were terminated because of threatening a supervisor and insubordination in connection with a dispute regarding a job assignment.  Respondent has submitted affidavits regarding the sequence of events leading to the discharges which support Respondent's position that the employees were discharged because of threatening conduct and refusing to perform assigned work.

However, Petitioner has submitted affidavits that reflect an entirely different version of the events at issue, specifically, that there was no threatening behavior (ECF 13 at 10, 94 100) or insubordinate conduct (ECF 13 at 28).  These affidavits support Petitioner's claim that Respondent's stated reason for termination is pretextual.

> 2.    Respondent's Discipline of an Employee

Petitioner alleges that Respondent violated Section 8(a)(3) of the NLRA when it disciplined an employee in retaliation for engaging in Union and/or protected concerted activity.

Petitioner's affidavits support the claim that the employee in question was active in the Union, a Union supporter and engaged in Union activities (ECF 13 at 40-47).  Further, this employee was also the target of coercive and threatening statements by the supervisor.  *See* Section A.3, *supra.*  Petitioner's affidavits, as previously cited, generally support the claim Respondent expressed animus toward Union supporters and did not want "Union people" at the plant.

Respondent denies that the employee in question was disciplined in retaliation for Union activities, and instead claims that the verbal warning was issued because of poor work.  ECF 15

(5:11 CV 679)

at Page ID # 279 and 290.  However, Petitioner has submitted affidavits in support of its position

that the employee in question had been assigned a new job within the plant and had not been

provided with the training and the time other employees are provided with to perfect a new job

assignment.   ECF 13 at 44-46.  The affidavit evidence supports Petitioner's claim that

Respondent expected this employee to learn a new job in a shorter time than expected of other

employees in retaliation for participating in Union activities, and that Respondent's stated reason

for discipline, i.e. poor work performance, is pretextual.

## II.  RELIEF REQUESTED

The Petitioner requests the following relief:[4]

1. That the Court issue an order directing Respondent promptly to file an answer to
the allegations of this petition and to appear before this Court, and show cause, if any there be,
why an injunction should not issue enjoining and restraining Respondent, its officers, agents,
representatives, servants, employees, attorneys, and all persons acting in concert or participation
with them, pending the final disposition of the matters involved herein, pending before the
Board, from:

(a) Telling employees that the Respondent does not want them to live in
certain areas because that is where Union supporters live;

(b) Telling employees that the Respondent is going to terminate employees
who participate in strikes and/or Union and/or other activities protected under the Act;

(c) Telling employees that the Respondent terminated an employee because of
his association with the Union;

(d) Threatening employees with termination and/or unspecified negative
consequences in retaliation for their Union and/or other activities protected under the
Act;

(e) Soliciting employees to be Respondent's agents for the purpose of making

---

[4] *See* ECF 1.

9

(5:11 CV 679)

unlawful statements and/or engaging in surveillance of employees' Union activities and/or other activities protected under the Act;

(f) Creating the impression that the Respondent is keeping track of employees' Union activities and/or other activities protected under the Act;

(g) Interrogating employees about their Union sympathies;

(h) Threatening employees that there will not be a raise as long as the Union represents the employees;

(i) Making statements that engaging in Union activities and/or other activities protected under the Act is futile;

(j) Engaging in surveillance of employees' Union activities and/or other activities protected under the Act;

(k) Coercively telling employees that they cannot visit the Human Resources office or time production lines;

(1) Disciplining, suspending or terminating employees because of their Union activities and/or other activities protected under the Act; and,

(m) In any like or related manner interfering with, restraining, or coercing employees in the exercise of rights guaranteed them by Section 7 of the Act.

2.  That the Court grant an interim order requiring the Respondent to take the following affirmative actions within five (5) days of the Court's interim order:

(a) Offer interim reinstatement in writing to Omar Carrion Rivera and Noe Vasquez Lozada to their former positions, without prejudice to their seniority or other rights and privileges previously enjoyed, displacing, if necessary, any employees hired, transferred or reassigned to replace them;

(b) Temporarily expunge from the personnel files of Omar Carrion Rivera, Noe Vasquez Lozada and Adolfo Jimenez any references to the terminations, suspensions, or disciplinary actions imposed for discriminatory reasons, notify the employees of such action, and not rely on those terminations, suspensions or disciplinary actions in any future discipline imposed prior to a final Board order;

(5:11 CV 679)

       (c) Translate, at Respondent's expense, the Court's interim order into Spanish and Karen, said translations to be approved by the Regional Director of Region 8 of the Board;

       (d) Within ten days of this Court's interim order, hold a meeting or meetings at Respondent's facility, scheduled to ensure the widest possible attendance, at which this Court's Order is to be read to the employees by a responsible management official in English and Spanish, and read in Karen by an employee fluent in that language; said readings to occur in the presence of representative(s) of the Board;

       (e) Post copies of the District Court's interim order in English, Spanish and Karen at Respondent's facility in all places where notices to employees are normally posted; maintain these postings during the Board's administrative proceeding free from all obstructions and defacements; grant all employees free and unrestricted access to said postings; and grant to agents of the Board reasonable access to said postings; and grant to agents of the Board reasonable access to Respondent's facility to monitor compliance with this posting requirement; and

       (f) Within 20 days of the issuance of the District Court's Decision and interim order, file with the District Court and serve upon the Regional Director of Region 8 of the Board, a sworn affidavit from a responsible official describing with specificity the manner in which Respondent has complied with the terms of the Court's interim order, including the location(s) of the posted documents.

### III.  SECTION 10(j) STANDARD FOR INTERIM INJUNCTIVE RELIEF

Section 10(j) of the NLRA authorizes district courts to grant temporary injunctive relief pending the Board's final resolution of the alleged unfair labor practices in order to preserve the status quo until the Board's determination.  The Sixth Circuit has consistently applied the "reasonable cause/just and proper" standard in analyzing petitions for § 10(j) injunctions. *Ahearn v. Jackson Hospital Corp.*, 351 F.3d 226, 234 (6th Cir. 2003).  Application of this standard requires that the district court find that "(1) there is 'reasonable cause' to believe that unfair labor practices have occurred, and that (2) injunctive relief with respect to such practices would be 'just and proper.'" *Id.* (quoting *Schaub v. W. Mich. Plumbing & Heating, Inc.*, 250

(5:11 CV 679)

F.3d 962, 969 (6th Cir. 2001)); *see also Glasser ex rel. N.L.R.B. v, ADT Sec. Services, Inc.*, 379

Fed. Appx. 483, 485 (6th Cir. 2010).  In making this determination, a district court "must be

mindful" that § 10(j) proceedings in district court are "subordinate to the unfair labor practice

proceedings to be heard before the Board" and therefore, "it is not the job of the district court, in

considering a § 10(j) petition to adjudicate the merits of an unfair labor practice case."  *Ahearn v.*

*Jackson Hospital Corp.*, 351 F.3d at 237 (internal quotations omitted) (quoting *Schaub v. W.*

*Mich. Plumbing & Heating, Inc.*, 250 F.3d at 969).

A.      Reasonable Cause

        Petitioner's burden of establishing "reasonable cause" to believe that an unfair labor

practice has occurred is "relatively insubstantial," and requires only that the Board's legal theory

underlying the unfair labor practice allegations be "'substantial and not frivolous' and that the

facts of the case be consistent with the Board's legal theory."  *Ahearn v. Jackson Hospital Corp.*,

351 F.3d at 237 (quoting *Schaub v. W. Mich. Plumbing & Heating, Inc.*, 250 F.3d at 969).  To

satisfy that burden, the Board is only required to "produce some evidence in support of the

petition."  *Kobell v. United Paperworkers International Union*, 965 F.2d 1401, 1406-07 (6th Cir.

1992).

        When reviewing the supporting evidence in the context of a § 10(j) petition, it is

inappropriate for the district court to make findings of fact, resolve conflicting evidence or make

credibility determinations.  *Ahearn v. Jackson Hospital Corp.*, 351 F.3d at 237 (citing *Kobell v.*

*United Paperworkers International Union*, 965 F.2d at 1407; *NLRB v. Kentucky May Coal Co.*,

89 F.3d 1235, 1239 (6th Cir. 1996)).  The district court must only determine whether facts exist

12

(5:11 CV 679)

which could support the Board's theory of liability under the NLRA. *Ahearn v. Jackson Hospital Corp.*, 351 F.3d at 237;  *Schaub v. W. Mich. Plumbing & Heating, Inc.*, 250 F.3d at 969.

B.      Just and Proper

A finding of reasonable cause alone is not sufficient to justify a § 10(j) injunction.  The district court must also make a determination of whether a temporary injunction is "just and proper."

"In determining whether injunctive relief is just and proper, the legal standard a district court must apply is whether such relief is "necessary to return the parties to the status quo pending the Board's proceedings in order to protect the Board's remedial powers under the NLRA, and whether achieving status quo is possible.'"  *Kobell v. United Paperworkers International Union*, 965 F.2d at 1410 (quoting *Gottfried v. Frankel*, 818 F.2d 485, 495 (6th Cir. 1987)).  "[Status quo] is defined as that existing *prior* to the adoption of the allegedly unfair labor practice."  *Kobell v. United Paperworkers International Union*, 965 F.2d at 1410 (emphasis in the original).  Interim reinstatement of employees may be just and proper where the evidence suggests that the terminations chilled Union activity by causing employees to fear reprisal. *Ahearn v. Jackson Hospital Corp.*, 351 F.3d. at 239; *Schaub v. West Michigan Plumbing & Heating, Inc.*, 250 F.3d at 970-71.  When making a "just and proper" determination, district courts must be mindful that the temporary injunctive relief to be granted is only that which is reasonably necessary "to preserve the ultimate remedial power of the Board and is not to be a substitute for the exercise of that power." *Ahearn v. Jackson Hospital Corp.*, 351 F.3d at

(5:11 CV 679)

239 (internal quotations omitted) (quoting *Schaub v. Detroit Newspaper Agency*, 154 F.3d 276, 279 (6th Cir. 1998)).

## IV.  LAW AND ANALYSIS

A.      Reasonable Cause

      1.      There is Reasonable Cause to Believe that
            <u>Respondent Violated Section 8(a)(1) of the NLRA</u>

It is an unfair labor practice under Section 8(a)(1) of the NLRA for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights" to organize, join or assist unions, bargain collectively and engage in collective action.  Under Section 8(a)(1) of the NLRA, it is illegal for an employer to make statement or threats that, when considered from the employees' point of view, would have a reasonable tendency to coerce employees in the exercise of their rights under Section 7 of the NLRA to engage in union or other protected activities. *Dayton Newspapers, Inc. v. National Labor Relations Board*, 402 F.3d 651, 659 (6th Cir. 2005).

Respondent's primary argument in opposition to Petitioner's Section 8(a)(1) claims is that the alleged coercive language is protected speech under Section 8(c) of the NLRA.  In support of this position, Respondent argues the speech at issue contains no threats of reprisal and is simply an expression of views, and therefore is protected under Section 8(c).  As an example, Respondent cites the alleged comments of Acen discouraging new employees from living in Dover or New Philadelphia.  Regarding these comments, Respondent argues that those comments, even if actually made by Acen, contain no threat of reprisal or unfavorable action,

14

(5:11 CV 679)

and are therefore protected speech under Section 8(c) and not coercive speech under Section

8(a)(1).[5]

Further Respondent generally disputes that the actions and statements of Respondent

alleged by Petitioner even occurred.  However, it is not this Court's role when determining

whether to grant 10(j) injunctive relief to make credibility determinations or to assess the merits

of Petitioner's legal theory.  In deciding whether reasonable cause exists to believe that

Respondent engaged in unfair labor practices in violation of Section 8(a)(1) the Court need only

determine whether Petitioner's allegations of unfair labor practices are substantial and whether

facts exist which support the Petitioner's theory of liability.  *Ahearn v. Jackson Hospital*

*Corporation*, 351 F.3d at 237.

The Court is not persuaded by Respondent's position that Petitioner's legal theory

regarding alleged Section 8(a)(1) is "insubstantial" with respect to Acen's alleged comments

regarding area cities where employees might live.  Petitioner has advanced affidavit evidence

that an employee was told not to live in certain areas because by living in those areas the

employee might be persuaded by others to join the Union.  The credibility of Petitioner's

evidence and the coercive impact of Respondent's alleged comments on the employee, if any,

must be determined by the Board.  Therefore at this juncture in the proceedings, the Court cannot

---

[5] *See* ECF 18-2.  In support of this argument, Respondent cites *Flying Foods*, 345 NLRB 101, 105-106 (2005) ([N]oncoercive expressions of opposition to unionization do not necessarily imply that representation by a union *** will lead to reprisals. ***employers remain free to express views,  argument, or opinion on unionization . . . so long as 'such expression contains no threat of reprisal or force of promise of benefit.'"); *Quantum Electric*, 341 NLRB 1270, 1277 (2004)("There was nothing in Vaccaro's statement to suggest Respondent would take any unfavorable action toward employees.").

15

(5:11 CV 679)

conclude that Petitioner's legal theory that Acen's comments regarding city of residence violates Section 8(a)(1) is insubstantial or unsupported by the record.  To the contrary, there is reasonable cause to believe that a violation has occurred.

Petitioner alleges additional comments and actions by Respondent's supervisors and agents which, if true, do contain threats of reprisal or unfavorable action, including for statements that: (a) Acen would get rid of strike participants "little by little"; (b) an employee was terminated because "I [Acen] don't want Union people here"; and (c) wages will not be increased until the Union is no longer at Case Farms.  Threatening employees with loss of employment or other adverse consequence if they strike, or trying to persuade employees to rid themselves of the union by promising they would be better off without the union, are "well established violations of § 8(a)(1)."  *Dayton Newspapers, Inc. v. National Labor Relations Board*, 402 F.3d at 660.

The Court finds ample evidence in the affidavits submitted by Petitioner to support Petitioner's substantial legal theory that Respondent violated Section 8(a)(1) of the NLRA with respect to Respondent's actions and statements described above, and reasonable cause to believe a violation has occurred.

There is also support in the record for Petitioner's claim that Respondent violated Section 8(a)(1) by soliciting employees to make unlawful statement to other employees regarding the Union and to engage in surveillance of employees' Union activities or other protected activities and report back to Respondent.  Specifically, Petitioner has provided affidavits asserting that: (a) employees were solicited by Respondent to tell employees they should not strike because strikes

16

(5:11 CV 679)

were not effective and that the Union did nothing for employees and that they would not receive a raise from Respondent until the Union was no longer at Case Farms; (b) Respondent enlisted employees to conduct surveillance on Union employees and representatives to determine if there was to be a strike and report back to Respondent; and (c) Respondent interrogated employees regarding their knowledge of Union activities and their Union sympathies.

Soliciting employees to engage in surveillance to communicate anti-Union statements to the employees, enlisting employees to conduct surveillance of Union activities, and interrogating employees regarding their Union sympathies and knowledge of Union activities is a Section 8(a)(1) violation because employees cannot feel free to exercise their Section 7 rights when recruited by the employer against the Union. *Metro One Loss Prevention Serv. Group, Inc.*, 356 NLRB No. 20 (2010) (employer violates NLRA by requesting an employee spy on another employee's union activities and report back to employer); *Marhoefer Baking Co., Inc.*, 258 NLRB 511, 514 (1981) (NLRA violation when employer recruits employee to convey anti-Union message to other employees); *see also Red Wing Carriers*, 224 NLRB 530, 536 (1976); *Pleasant Manor Living Center*, 324 NLRB 368 (1977) (questioning an employee about her union sympathies is illegal interrogation when done by high-level supervisor initiating conversation with employee who was not a known union supporter).

The Court finds ample evidence in the affidavits submitted by Petitioner to support Petitioner's substantial legal theories that Respondent violated Section 8(a)(1) of the NLRA with respect to Respondent's actions and statements described above, and reasonable cause to believe that a violation has occurred.

17

(5:11 CV 679)

In addition to recruiting employees to conduct surveillance, it is also a Section 8(a)(1)
violation for an employer to engage in surveillance of employees' Union activities or to create
the impression that an employer is keeping track of employees engaged in Union activities or
other activities protected by the NLRA.  *In re Mohawk Indus. Inc.*, 334 NLRB 1170 (2001)
(telling employees that the employer had a list of union supporters creates an unlawful
impression of surveillance of employees' union activities).  There is evidence in the record that
Respondent maintained a list of employees active in the Union, which supports Petitioner's
substantial legal theory that Respondent conducted, or created the impression of conducting,
surveillance of employees' Union activities, and reasonable cause to believe a violation of
Section 8(a)(1) has occurred.

Finally, it is a Section 8(a)(1) violation of the NLRA for an employer to treat an
employee in a discriminatory or retaliatory manner for having engaged in Section 7 protected
activity.  Singling out an employee for treatment different from other employees because of
union activity, rather than for a legitimate reason, is a violation of Section 8(a)(1).  *Success
Village Apartments, Inc.*, 348 NLRB 579 (2006).  There is evidence in the record which supports
Petitioner's allegation that Respondent would not allow an employee who was a known Union
supporter to visit Respondent's human resources office or time production lines during break,
instead requiring the employee to stay in the break room during break, when other employees
were not so required.  The Court finds that this evidence supports Petitioner's substantial legal
theories that Respondent violated Section 8(a)(1) of the NLRA with respect to Respondent's

18

(5:11 CV 679)

actions and statements referred to above, and reasonable cause to believe that a violation has

occurred.

>2.      There is Reasonable Cause to Believe that
>        <u>Respondent Violated Section 8(a)(3) of the NLRA</u>

It is an unfair labor practice under Section 8(a)(3) of the NLRA for an employer to

"discriminat[e] in regard to hire or tenure of employment or any term or condition of

employment to encourage or discourage membership in any labor organization."  In this case,

Petitioner alleges that two employees were terminated, and one employee was disciplined,

because of their Union activities in violation of Section 8(a)(3).

It is Respondent's position that the two employees were terminated for legitimate reasons

(one for threatening a supervisor and one for insubordination) and not because of their Union

activities.  According to Respondent, the threats and insubordination occurred in the context of a

concerted effort by the Union to disrupt work and pressure the Respondent into submitting to the

Union's bargaining demands.

>*a.      Terminations*

With respect to the employee terminated for alleged threatening conduct, Respondent

argues that the alleged threats did not occur in the context of protected concerted activity, but

with respect to the employee's own personal grievance regarding training burdens, and that no

case law protects or excuses an employee's menacing defiance of a supervisor in the presence of

other workers.[6]  However, the record reflects that there is a fact dispute as to whether the

---

[6] Respondent cites in support  *Marico Enterprises, Inc.*, 283 NLRB 726 (1987), *Waste*

(continued...)

19

(5:11 CV 679)

employee at issue engaged in threatening behavior at all. Affidavits submitted by Respondent assert that the employee raised his voice to his supervisor and was physically menacing to the supervisor. Affidavits submitted by Petitioner assert that the employee at issue did not raise his voice or engage in menacing behavior and that it was the supervisor who was confrontational. Credibility and fact findings must be made before it can be concluded whether a violation occurred and those determinations are expressly beyond the purview of this Court in a 10(j) proceeding. This Court's only role as this stage of the 10(j) analysis is to determine whether there is evidence to support Petitioner's substantia legal theory and there is reasonable cause to believe a violation occurred.

With respect to the employee allegedly terminated for insubordination, Respondent contends that the employee at issue defied the instructions of his supervisor regarding his work location. However, Petitioner has advanced evidence that during the same time-frame the employee at issue was asked by another supervisor to move and work on another production line in the plant and that the employee readily complied.

Under Section 8(a)(3) of the NLRA, an employer cannot terminate an employee for engaging in Union or other protected activities. The Board uses a burden shifting test to determine whether a termination violates the NLRA. *Wright Line*, 251 NLRB 1083 (1980).[7]

---

[6](...continued)
*Management of Arizona*, 345 NLRB 1339 (2005), *Atlantic Steel*, 245 NLRB 814 (1979), *K-Mart Corp.*, 341 NLRB 702 (2004), *Epilepsy Foundation of Northeast Ohio*, 268 F.3d 1095 (D.C. Cir. 2001).

[7] First it must be established that protected conduct was the motivating factor in the termination. The burden then shifts to the employer to advance evidence that the employee

(continued...)

(5:11 CV 679)

With respect to the termination of these employees, evidence advanced by Petitioner supports the substantial legal theory that these two employees were terminated in violation of Section 8(a)(3) of the NLRA.  That is, Petitioner has advance evidence that Respondent was well aware of both employees' Union activities, that statements by supervisors reflect Respondent's anti-union animus, that the employees in question did not engage in threatening or insubordinate conduct, and that Respondent's stated reason for terminating these employees is pretextual.  Accordingly, the Court concludes that there is reasonable cause to believe that the two employees in question were terminated in violation of Section 8(a)(3) of the NLRA.

       b.     *Discipline*

       With respect to the employee disciplined by a verbal warning for poor work, Respondent points out that this employee admits to doing poor work on a new job assignment cutting wings, and argues that the employee is still working at the Respondent's facility and that the intermittent strikes led by this employee were unprotected activity and that the employee could have, but was not, terminated for leading such strikes. However, this argument misses Petitioner's point that this employee was disciplined and given a very short time to correct performance when other employees doing new work are given substantially more time to learn the new work and improve their performance.

       Petitioner has advanced evidence in the record to support the substantial legal theory that Respondent's discipline of this employee for poor work and requirement that he improve in a

---

[7](...continued)
would have been terminated even in the absence of protected conduct.  Lastly, the burden shifts back to establish to establish that the stated reason for termination is pretextual.

21

(5:11 CV 679)

shorter time frame than normally allocated to employees to learn new work, was because of Respondent's anti-Union animus and knowledge of the employee's Union activities, and not because the employee had been at the plant for six years and therefore should need less time to learn a new job.  Accordingly, the Court concludes that there is reasonable cause to believe that the employee in question was disciplined in violation of Section 8(a)(3) of the NLRA.

B.    Just and Proper

For the reasons discussed above, the Court finds that the Petitioner has satisfied its burden of advancing some evidence in support of the Petition and concludes that there is reasonable cause to believe that a violation of Sections 8(a)(1) and (a)(3) of the NLRA has occurred on all of the different bases advanced by Petitioner.  However, determination of reasonable cause to believe a violation has occurred is only the first of two steps in the Court's Section 10(j) analysis.

The second step requires the Court to determine whether awarding injunctive relief would be "just and proper."  As stated *supra*, the legal standard for determining whether an award of injunctive relief is "just and proper" is whether the injunctive relief is necessary to return the parties to the status quo pending the Board's proceedings in order to protect the Board's remedial powers under the NLRA, and whether achieving status quo is possible. "Interim judicial relief is warranted whenever 'the circumstances of a case create a reasonable apprehension that the efficacy of the Board's final order may be nullified, or the administrative procedures will be rendered meaningless.'  In such cases '[p]reservation and restoration of the status quo are then appropriate considerations in granting temporary relief pending determination

22

(5:11 CV 679)

of the issues by the Board.'" *Sheeran v. American Commercial Lines, Inc.*, 683 F.2d 970, 979

(6th Cir. 1982) (quoting *Angle v. Sacks*, 382 F.2d 655, 660 (10th Cir. 1967)).

Petitioner argues that interim injunctive relief is just and proper in this case to preserve

the employees' free choice of the Union as their collective bargaining representative, preserve

the Union's ability to bargain effectively on behalf of the employees it represents, prevent

Respondent's violations from irreparably eroding support for the Union, and prevent the final

Board order in this case from being meaningless.  Indeed the need for interim relief is heightened

in this case because the Union was certified but Respondent and the Union have yet to achieve

an initial collective bargaining agreement covering the unit employees.[8]

Respondent counters that interim injunctive relief is not just and proper because such

relief is only sought to create chaos at the Respondent's facility and disrupt Respondent's work.

Further, Respondent argues that the employees who were terminated for misconduct contributed

to the deterioration of labor relations at the plant and that their return to work would actually be

counter-productive to good labor relations.  Lastly, Respondent challenges both the effectiveness

and importance of the discharged employees' role in the Union and disputes Petitioner's claim

that their discharge and continued absence has a negative affect on employee support for the

Union.[9]

The Court previously concluded that there is reasonable cause to believe that Respondent

engaged in the above-discussed coercive conduct and that Respondent discharged and

---

[8] Petitioners Confidential Brief in Support of Petition for 10(j) Injunction (ECF 18-1 at p.
25 of 34).

[9] ECF 18-2.

23

(5:11 CV 679)

disciplined three employees because of their Union involvement and other protected activities.

Petitioner has also advanced evidence which supports the conclusion that Respondent's actions

have undermined the Union's status as the employees' bargaining representative at a time when

the first collective bargaining agreement between Respondent and the Union has yet to be

secured, and that employees fear to show support for the Union because of their belief that if the

Respondent could successfully discharge these employees for their activity in the Union, anyone

can be discharged, resulting in a chilling effect on the employees' exercise of protected

activities.

The interim injunctive relief sought by Petitioner is set forth in Section II, *supra.*

Specifically, the relief sought would prohibit Respondent from engaging in the conduct

identified in the Petition and reflected in Section II, return the two discharged employees to

work, and expunge the personnel files of the discharged and disciplined employees.  The purpose

of the relief sought is to return to status quo by restoring an environment where employees feel

free to exercise their Section 7 rights without fear of reprisal, reversing the negative effect of

Respondent's conduct on Union at the bargaining table, and preventing Respondent's conduct

from irreparably eroding employee support for the Union.

The record supports a conclusion that: (a) employees do not feel free to exercise their

Section 7 rights; (b) employees are afraid to show support for the Union and fear for their jobs if

they do so; (c) as a consequence of this fear, employee support for and active participation in the

Union has declined; (d) employees' confidence in the Union as their representative has been

eroded; and (e) effective negotiation by the Union of a collective bargaining agreement has been

24

(5:11 CV 679)

impaired, all as a consequence of the coercive atmosphere and the discharge and dismissal of

active Union employees.  ECF 13 at 48, 94, 100, 105-110.  The Court concludes that based on

the evidence in the record an interim injunction prohibiting the above-described coercive

conduct, restoring the discharged employees to work, and expunging the personnel files of the

discharged and disciplined employees is necessary to restore the status quo of an environment

where employees feel free to exercise their Section 7 rights without fear of reprisal, restore

leadership to the Union with respect to the collective bargaining process, and prevent further

erosion of employee confidence and support for the Union in order to preserve the ultimate

remedial power of the Board.

   The evidence in the record supports the conclusion that without an interim injunction the

employees' confidence in the Union as an effective bargaining representative and their right to

engage in protected activity, and the Union's ability to effectively negotiate a collective

bargaining agreement, will further erode as employees continue to perceive that Respondent is

"winning" and the Union is "losing."  This is especially necessary in this context where the

Respondent and Union have yet to successfully negotiate their first collective bargaining

agreement and employees are "highly susceptible" to unfair labor practices.  *Calatrello v.*

*General Die Casters,* 2011 WL 446685 at * 8 (N.D. Ohio 2011) (citing *Ahearn,* 351 F.3d at

239).  An interim injunction will restore employees' confidence that they are free to support the

Union and exercise there Section 7 protected rights without fear of reprisal by Respondent.

Without an interim injunction to prevent continued erosion of employee confidence and support

25

(5:11 CV 679)

of the Union, the Board remedial powers will not be preserved and may render meaningless the Board's ultimate decision should it find in favor of the Union.

In addition to restoration of the discharged employees and the expungement of the discharged and disciplined employees' personnel files, Petitioner also seeks an order that Respondent take the affirmative steps of both posting and reading the Court's Order of Interim Injunctive Relief to the employees at Case Farm's facility in Winesburg, Ohio.

The record supports Petitioner's allegation that Respondent's Human Resources Manager has engaged in the unfair labor practices in question, which sends an especially strong message to employees about their ability to support the Union and the potential for loss of their jobs.  The Court concludes that under these circumstances it is necessary and proper for this interim Order to be both read to the employees in their first language and posted in order to effectively communicate to employees that they are free to exercise their Section 7 rights without fear of reprisal, to restore employee support for the Union, and to ensure the collective bargaining process is not undermined.  *See Calatrello v. General Die Casters*, 2011 WL 446685 at * 4 (N.D. Ohio).

## V.  CONCLUSION

For the foregoing reasons, the Court finds reasonable cause to believe that unfair labor practices have been committed in violations of Sections 8(a)(1) and (a)(3) of the NLRA, and that the injunctive relief requested by Petitioner is just and proper.  Accordingly, the Petition for § 10(j) relief (ECF 1) is GRANTED in its entirety.

26

(5:11 CV 679)

Accordingly, IT IS HEREBY ORDERED that pending the final disposition of the matters herein before the National Labor Relations Board, the Respondent, and its officers, agents, representatives, servants, employees, attorneys, and all persons acting in concert or participation with them, be and they hereby are, enjoined and restrained from:

(a) Telling employees that the Respondent does not want them to live in certain areas because that is where Union supporters live;

(b) Telling employees that the Respondent is going to terminate employees who participate in strikes and/or Union and/or other activities protected under the Act;

(c) Telling employees that the Respondent terminated an employee because of his association with the Union;

(d) Threatening employees with termination and/or unspecified negative consequences in retaliation for their Union and/or other activities protected under the Act;

(e) Soliciting employees to be Respondent's agents for the purpose of making unlawful statements and/or engaging in surveillance of employees' Union activities and/or other activities protected under the Act;

(f) Creating the impression that the Respondent is keeping track of employees' Union activities and/or other activities protected under the Act;

(g) Interrogating employees about their Union sympathies;

(h) Threatening employees that there will not be a raise as long as the Union represents the employees;

27

(5:11 CV 679)

(i) Making statements that engaging in Union activities and/or other activities protected under the Act is futile;

(j) Engaging in surveillance of employees' Union activities and/or other activities protected under the Act;

(k) Coercively telling employees that they cannot visit the Human Resources office or time production lines;

(1) Disciplining, suspending or terminating employees because of their Union activities and/or other activities protected under the Act; and

(m) In any like or related manner interfering with, restraining, or coercing employees in the exercise of rights guaranteed them by Section 7 of the Act.

IT IS FURTHER HEREBY ORDERED that pending the final disposition of the matters herein before the National Labor Relations Board, the Respondent, and its officers, agents, representatives, servants, employees, attorneys, and all persons acting in concert or participation with them, shall take the following affirmative steps within five (5) days of this Order:

(a) Offer interim reinstatement in writing to Omar Carrion Rivera and Noe Vasquez Lozada to their former positions, without prejudice to their seniority or other rights and privileges previously enjoyed, displacing, if necessary, any employees hired, transferred or reassigned to replace them;

(b) Temporarily expunge from the personnel files of Omar Carrion Rivera, Noe Vasquez Lozada and Adolfo Jimenez any references to the terminations, suspensions, or disciplinary actions imposed for discriminatory reasons, notify the

28

(5:11 CV 679)

employees of such action, and not rely on those terminations, suspensions or disciplinary

actions in any future discipline imposed prior to a final Board order;

(c) Translate, at Respondent's expense, the Court's order of interim injunctive

relief into Spanish and Karen, said translations to be approved by the Regional Director

of Region 8 of the Board;

(d) Within ten (10) days of this Court's order of interim injunctive relief , hold a

meeting or meetings at Respondent's facility, scheduled to ensure the widest possible

attendance, at which this Court's order of interim injunctive relief is to be read to the

employees by a responsible management official in English and Spanish, and read in

Karen by an employee fluent in that language, said readings to occur in the presence of

representative(s) of the Board;

(e) Post copies of the Court's order of interim injunctive relief  in English,

Spanish and Karen at Respondent's facility in all places where notices to employees are

normally posted, maintain these postings during the Board's administrative proceeding

free from all obstructions and defacements, grant all employees free and unrestricted

access to said postings, and grant to agents of the Board reasonable access to said

postings, and grant to agents of the Board reasonable access to Respondent's facility to

monitor compliance with this posting  requirement; and

(f) Within twenty (20) days of the issuance of the Court's order of interim

injunctive relief , file with the Court and serve upon the Regional Director of

Region 8 of the Board, a sworn affidavit from a responsible official describing

29

(5:11 CV 679)

with specificity the manner in which Respondent has complied with the terms of

the Court's interim order, including the location(s) of the posted documents.


This case is hereby CLOSED.  However, the Court has continuing jurisdiction regarding

the enforcement of this Order.


IT IS SO ORDERED.


  June 20, 2011                                           s/ David D. Dowd, Jr.
Date                                              David D. Dowd, Jr.
                                                  U.S. District Judge

30